## STATE v. DANIEL McBRYDE.

### *Evidence—Intent.*

1. Whether there is any evidence, is a question for the Court; what weight is to be given it when there is any, is for the jury.

2. When the evidence only raises a suspicion of the defendant's guilt, it is error to leave it to the jury.

3. When the act of a person may be reasonably attributed to two or more motives, the one criminal and the other innocent, the law will always ascribe the act to the innocent motive.

4. The fact that the prisoner entered a dwelling-house in the night time, he having no right to be there, and fled upon being discovered, is some evidence to go to the jury that he entered with intent to steal, in the absence of any explanation on his part, although no theft was committed.

5. Where the *gravamen* of the crime consists in the intent alone, the jury may infer the intent from the circumstances.

(*State* v. *Patterson*, 78 N. C., 470; *State* v. *Rice*, 83 N. C., 663; *State* v. *Massey*, 86 N. C., 660; cited and approved; *State* v. *Boon*, 13 Ired., 244; *State* v. *Haynes*, 71 N. C., 79; commented on).

(*State* v. *McDaniel*, 1 Winst., 249; cited in the dissenting opinion).

INDICTMENT, tried before *Gilmer, Judge,* and a jury, at August Term, 1886, of ROBESON Superior Court.

This was an indictment for entering the dwelling-house of one J. A. Hornaday in the night time, otherwise than by a burglarious breaking, to wit: through an open window, with a felonious intent.

There were two counts in the indictment, the first charging the entry to have been with intent to steal the goods of J. A. Hornaday, and the second with intent to commit a rape upon Mary E. McQuagin.

The State introduced the said Mary as a witness, who testified in substance, that on the 22d day of July, 1886, she was at the house of J. A. Hornaday, in the county of Robe-

son; that there was an open window in the room in which she was sleeping, and that she woke up about two o'clock in the night, and saw the prisoner sitting on the foot of the bed. That she was not frightened, and that the prisoner did not put his hand upon her; that she screamed. and the prisoner immediately ran and jumped out of the open window. It was a moonlight night, and there were several windows in the room. That when she went to bed, there was a dress on a trunk at the open window, and when she awoke the dress was on the head of her bed, and that she did not know who put it there; that there was another lady sleeping in the room, and that their beds were about ten feet apart."

There was no evidence as to whom the dress belonged, or who removed it, or whether the witness or other lady retired first.

J. A. Hornaday was then put upon the stand and testified as follows:

"That he was sleeping in the house on the night of July 22d, 1886, in a different room from the ladies, and he heard the screaming, and jumped up and got his gun and went into the room where they were, and when he got there, the person who had entered the room had gone, and that the witness Mary E. McQuagin, informed him that Daniel McBryde was the person who had been in the room; that the moon rose that night about eleven o'clock."

The defendant offered no evidence.

His Honor, in response to the first prayer for instructions for the defendant, charged the jury: "That the evidence in the case is not reasonably sufficient to maintain the charge against the defendant of an intent feloniously to ravish and to have carnal knowledge of Mary McQuagin, forcibly and against her will," and in response to the third prayer, he charged the jury: "That even if they should believe from the evidence, that the prisoner entered the house for an unlawful purpose, they could not convict him, unless that pur-

pose was with the intent to feloniously steal, take and carry away the goods and chattels of J. A. Hornaday; and if the jury, from the evidence, are left in doubt as to the intent with which he entered the dwelling-house, they could not convict, as the prisoner is entitled to the benefit of all doubts."

The second prayer for instructions was as follows: "That the evidence in this case is not reasonably sufficient to maintain the charge against the defendant, that he did unlawfully and feloniously, otherwise than by a burglarious breaking, to-wit: did then and there feloniously enter the dwelling-house of J. A. Hornaday, in the night time through an open window, with the felonious intent then and there of the goods and chattels, money and other property of the said J. A. Hornaday in the said dwelling-house then and there being, feloniously to steal, take and carry away." His Honor refused to give this charge, and in addition to the charge given as above, charged the jury, "that there was no evidence as to who removed the dress, or whose property it was, and if they were fully satisfied that the prisoner entered the house of the said J. A. Hornaday with the felonious intent to steal, take and carry away any of the goods, chattels, money or other property of J. A. Hornaday in the said dwelling, that they would find him guilty, and that if they were not so satisfied, they would find him not guilty."

There was a verdict of guilty. Judgment and appeal to this Court.

*The Attorney-General,* for the State.
No counsel for the defendant.

DAVIS, J., (after stating the facts). It is insisted for the defendant, that there was no evidence that should have gone to the jury, and that the Court should have directed an acquittal. Whether there is any evidence, is a question for

the Court; what weight is to be given to it when there is any, is for the jury. " When there is no evidence, or if the evidence is so slight as not reasonably to warrant the infer-ence of the defendant's guilt, or furnish more than material for mere suspicion, it is error to leave the issue to be passed upon by the jury;" *State* v. *Patterson,* 78 N. C., 470; *State* v. *Rice,* 83 N. C., 663, and the cases there cited.

" When the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal. It is neither charity, nor common sense, nor law, to infer the worst intent which the facts will admit of;" *State* v. *Massey,* 86 N. C., 660, and the cases there cited.

These cases from our own Reports, and others of a simi-lar purport, cited by counsel for the defendant, are relied on as authority for the position that in this case, there was *no evi-dence* that should have been submitted to the jury upon the question of *intent* to commit the crime charged. It is often difficult, in the application of the principle that requires the Court to withhold from the jury the evidence, when so slight as not reasonably to warrant a conviction, to determine the point where the power and duty of the Court end, and the right and duty of the jury begin. The same facts and cir-cumstances impress different minds with different degrees of force, and what may, in the opinion of one, be entirely sufficient to warrant an inference of guilt, would, in the opinion of another, be slight and unsatisfactory. That dif-ficulty is presented in this case, but after full consideration, we think there was evidence to go to the jury, and that there was no error in the charge of the Court. The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no ex-planation or evidence of a different intent, the ordi-

nary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent. Here there was no larceny or other felony actually committed, and the guilt, if any, consisted in the *intent* to commit a felony, which was not consummated. There was no "*breaking*," but by statute (*The Code,* §996), it is made a misdemeanor, "if any person shall break or enter a dwelling-house of another, otherwise than by a burglarious breaking, * * * * * * with intent to commit a felony or other infamous crime therein."

The intent, which is the substantive crime charged, is not the object of sense—it can not be seen or felt, and if felonious, is not usually announced, so where no felony has been actually consummated, (in which case the intent may be presumed from the act,) it would be difficult to prove any crime consisting of the intent alone, unless the jury be allowed to infer the intent from circumstances. What are the circumstances in this case? The prisoner entered the dwelling-house of Hornaday about two o'clock in the night time; two ladies were asleep in a room of the house in the warm month of July—the window was open, and when one of them awoke, she saw the prisoner sitting on the foot of her bed; she screamed, and he fled instantly through the open window—some clothing had been displaced. He offered no evidence to explain his intent.

The humanity of our law will not permit juries to draw any inference to the prejudice of a prisoner from the fact that he does not himself go upon the stand as a witness in his own behalf, but there was no explanatory fact or circumstance from any source, to show any intent not criminal, and the facts and circumstances proven are sufficient to outweigh the legal presumption of innocence, and put him upon his defence.

The jury was relieved from any consideration of the intent charged in the second count of the indictment by the charge of his Honor. Of this the prisoner certainly could not complain, unless it be error, in considering the intent to steal, to exclude an hypothesis of a more heinous intent than that charged.

"The intention of the parties," says Roscoe, "will be gathered from all the circumstances. * * * Persons do not in general go to houses to commit trespasses in the middle of the night." Criminal Evidence, 347. "The very fact of a man's breaking and entering a dwelling-house in the night time, is strong presumptive evidence that he did so with intent to steal, and the jury will be warranted in finding him guilty, unless the contrary be proved." Wharton's Criminal Law, 1600.

Blackstone, in speaking of the intent as an ingredient in the crime of burglary, says, "it is the same whether such intent be actually carried into execution, or only demonstrated by some attempt or overt act, of which the jury is to judge." 4 Blackstone, chapter 16.

In *Rex* v. *Brice* (English Crown Cases), Russell & Ryan, 449, it was left to the jury to say, whether from the breaking and entering they were satisfied that the prisoner's intention was to steal, and upon conviction ten of the twelve judges held that it was proper. The same was held by PARK, J., in Lewin's Crown Cases, vol. 2, page 37.

Similar authority is found in Archbald's Crim. Prac. and Pleading, 340.

We have gone more fully into the consideration of the question presented in this case, because in some of our own Reports, notably the *State* v. *Boon*, 13 Ired., 244, and *State* v. *Haynes*, 71 N. C., 79, evidence stronger perhaps than that presented here, seems to have been regarded as slight, though permitted to go to the jury. It will be observed, that the evidence in the cases cited related to the crime of burglary, a cap-

ital felony, and if deemed of sufficient weight to warrant the jury in convicting of the higher crime certainly it would be admissible in a case of misdemeanor, as this is.

There is no error. Let this be certified.

SMITH, C. J., dissenting. Two ingredients enter into and are essential to the constitution of the offence charged in the indictment. As in case of burglary, the entering into the dwelling-house of another, otherwise than by a burglarious breaking, and the there formed intent to commit a felony or other infamous crime therein. Both elements must co-exist and be proved, in order to a conviction of the statutory crime. It differs from burglary, in that no breaking is necessary in the removal of fastenings; the house need not be a dwelling—nor the entry made in the night season. But in both cases, the act done is inseparably associated with the intent, and the crime is consummated when they co-exist. If the attempt be abandoned after entrance, it would not remove the criminality; *State* v. *McDaniel,* 1 Winst., 249, nor would the offence have been perpetrated, by a felonious purpose formed, and a felony committed, only after entering. But the inference would, in the latter case, be almost irresistible that the purpose to do what was done, was present in the mind of the accused, and an incentive to his entering.

It has been held in the case cited in the opinion of the Court, that a jury might infer an intent to commit a larceny from a mere burglarious breaking into a dwelling-house at night, when the party was repulsed before effecting his purpose or giving any indications whatever of it. It is not necessary to call in question the correctness of the ruling, further than to say, that when an objection was made to a conviction for burglary, based on the want of evidence of the imputed intent, this Court, not content with resting its decision upon such authority, met the point thus: "The prisoner broke and entered the dwelling about 10 o'clock in the

night, and shortly after the inmates had gone to bed. When discovered, he fled; the dress containing the pocket-book had been displaced from where it was, upon the chair, and separated from the other garments, and thrown upon the floor, and the pocket-book, which was in it, when the prosecutrix retired to bed, was gone; and there was no evidence that any other person had been in the house;" *State* v. *Haynes*, 71 N. C., 84.

But assuming that the breaking into a dwelling at night, is so usually done for the purpose of stealing goods therein, that a jury may infer the one fact from the other (and it is certainly going far enough to make the admission), the finding ought to be controlled very much by the indications of the purpose promoted by the conduct of the person after he has entered, rather than by conjectures of the purpose in the absence of any such evidence. The defendant, whose manner of getting into the house is not known, though most probably through the open window, is found quietly sitting on the foot of the bed when the prosecutrix awakes, making no disturbance himself. Startled by her cries, he springs up and dashes out of the window. Another woman occupies a bed some ten feet distant. Nothing is missed, and only her dress, left on a chair, is found now on her bed; by whom removed, does not appear. How long he had been in the room is not known, but while if theft was his object, he had ample opportunity to take what he was in search of and depart, without disturbing the slumbers of the occupants of the room, yet nothing was carried away. Why was he quietly waiting in that position, unless for some unlawful design upon the person of the prosecutrix, whether to be accomplished by force, if need be, or by voluntary submission hoped for, which would have been frustrated by offering violence before trying her volition? Do not these facts and this conduct repel the suggestion that larceny was his object? The jury were directed not to convict upon the

charge which alleges an intent to commit rape, for he did not touch the person of the prosecutrix, as did the prisoner grasp the ankle of the sleeping young lady, and thus indicate meditated violence, in *State* v. *Boon*, 13 Ire., 244, which evidence, the late Chief Justice said, "is certainly very slight," of the imputed intent. Surely, whether sufficient or not to warrant a conviction of an intended rape, it tends strongly to disprove that stealing was the purpose of the unlawful entry, for all the facts are at variance with that hypothesis.

In my opinion, therefore, there was not sufficient evidence of the intent charged to warrant a conviction, and so ought the jury to have been instructed.

No error.                                                 Affirmed.