STATE OF NORTH CAROLINA v. AARON ELWOOD PIGOTT

No. 10A86

(Filed 7 July 1987)

1. Criminal Law § 66.9— suggestive photographic identification procedure—no substantial likelihood of mistaken identification

Although the group of photographs used in a pretrial identification pro-cedure was unnecessarily suggestive, there was no substantial likelihood of misidentification so that the admission of a rape victim's photographic and in-court identifications of defendant did not violate defendant's due process rights where the store in which the rape occurred was well lighted; the victim, a store employee, saw defendant face-to-face three times before he attacked her and also during the attack itself; the victim had reason to pay close atten-tion to defendant on his third trip to the cash register; the victim's description of her assailant to the police fit defendant; the victim displayed no uncertainty about her choice; and the photographic identification was made within hours of the crime.

2. Criminal Law § 66.9— suggestive photographic identification procedure—no substantial likelihood of misidentification

Although the group of photographs used in a photographic identification procedure was unnecessarily suggestive, there was no substantial likelihood of misidentification of defendant by two deliverymen who had seen defendant at the store where a rape occurred so that the admission of their photographic and in-court identifications of defendant in the rape trial did not violate de-fendant's due process rights where each man had known defendant for some years; each saw defendant twice in the store under good lighting conditions and each recognized him at that time; one of the men paid particular attention to defendant because of his dress; the other man paid sufficient attention to come back into the store and tell the victim to "watch" defendant; the "description" each man gave the police consisted of defendant's name and other information about him and a brief description of his dress; both men

were positive in their identifications of defendant both in the store and at the pretrial photographic procedures; and the photographic identifications of defendant occurred within hours of the crime.

3. **Bills of Discovery § 6— State's failure to make discovery—refusal of mistrial as sanction**

Although the State violated the discovery statutes in a rape case by failing to provide defense counsel with photographs of defendant showing scratches on his body pursuant to counsel's request for the discovery of documents, the trial court did not abuse its discretion in denying defendant's motion for a mistrial as a sanction for the State's failure to make discovery where the district attorney first became personally aware of the photographs during the trial; defendant was allowed ample time to examine the photographs before their introduction into evidence; although defendant had reason to believe there were no photographs at the time he made an opening statement and cross-examined the victim about scratches on her assailant, he had no reason to believe that the State would not produce witnesses to testify to scratches on defendant; and the State did in fact present such witnesses. N.C.G.S. §§ 15A-902(b), 15A-903(d), and 15A-910.

Justice MEYER concurring.

Justices MITCHELL and MARTIN join in this concurring opinion.

APPEAL from a sentence of life imprisonment imposed by *Ellis, J.,* following defendant's conviction of first degree rape at the 9 September 1985 Criminal Session of Superior Court, BRUNSWICK County. Heard in the Supreme Court 9 March 1987.

*Lacy H. Thornburg, Attorney General, by William F. Briley, Assistant Attorney General, for the State.*

*William F. Fairley, for defendant-appellant.*

FRYE, Justice.

Defendant contends first that his identification by three of the State's witnesses was so tainted by impermissibly suggestive pretrial identification procedures that his identification by these witnesses at trial violated his right to due process. Second, he contends that the trial judge improperly allowed into evidence certain photographs produced in mid-trial by the police to the surprise of all and to the prejudice of the defendant. We disagree with both contentions and hold that defendant received a trial free of reversible error.

Defendant was indicted on 22 July 1985 for first degree rape and tried at the 9 September 1985 Criminal Session of Superior

Court, Brunswick County, with Ellis, J., presiding. The jury found him guilty as charged, and Judge Ellis entered the mandatory sentence of life imprisonment. Defendant appealed to this Court.

The State's evidence at trial tended to show that the victim[1] was working as the third shift cashier at a convenience mart in Shallotte, North Carolina, on the morning of 5 May 1985, when at about 5:30 a.m. an individual later identified by her as defendant entered the store and asked her for change. He took the change and went to play a video game located in the store. As was her practice, she "kept an eye on him." After playing about ten minutes, he returned to the cash register and bought a drink and some crackers and went towards the back of the store (where the restrooms were located). At about that time, three deliverymen from Merita bread arrived. Two of the men knew defendant, although one of them did not know his name. Both men twice saw defendant face-to-face while they were in the store. As they were leaving, the senior man came back into the store and told the victim that she should "watch" defendant. The victim called the police, and the deliverymen left. Defendant came up to the counter, asked about the price of a sandwich, and returned it to the cooler. The victim turned her back to him; he grabbed her by the neck and dragged her to the storage area where he produced a knife and raped her at knife point. The victim suffered permanent damage to her back.

Defendant denied being in the store at all and offered alibi evidence.

I.

The victim testified and the trial judge found that after defendant left the convenience store, the victim called the police and was taken to the hospital for an examination. Later that afternoon, she was taken back to the police department. There, one of the officers presented the victim with a stack of ten photographs and said that she had some pictures she wanted the victim to look at. The officer made no other statement about the photographs. The victim looked through the entire stack and then selected a photograph of defendant, which she identified as a picture of her assailant.

---

1. To spare the victim further embarrassment, we will not refer to her by name in this opinion.

[1]   Defendant contends that the admission of both this out-of-court identification and the victim's subsequent in-court identification of him was reversible error. The test to be applied is clear. "Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E. 2d 91, 94 (1983).

Defendant contends that the group of photographs used in the identification procedure in question was unnecessarily suggestive. The trial court effectively found, and indeed we can see for ourselves, that six of the ten photographs used were so poor as to be virtually unidentifiable. Of the remaining four, one was of a man obviously older and heavier than the man described by the victim, and one was of a man in the uniform of the Brunswick County Sheriff's Office, leaving an effective group of two real choices. Defendant's was the only photograph in the entire group of a person dressed in a manner similar to that described by the victim. The State offered no explanation, either before this Court or the trial court, for the photograph selection. We assume, therefore, for the purposes of this opinion, that the use of this photographic group was unnecessarily suggestive.

However, our inquiry does not end there. *Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140 (1977). An identification at an unnecessarily suggestive pretrial identification procedure is not inadmissible unless the procedure employed was so suggestive that there is a substantial likelihood of irreparable misidentification. *State v. Flowers*, 318 N.C. 208, 220, 347 S.E. 2d 773, 781 (1986). Whether there is a substantial likelihood of misidentification depends upon the totality of the circumstances. *Id.* In making this determination, a court must consider the following factors:

1) The opportunity of the witness to view the criminal at the time of the crime;

2) the witness' degree of attention;

3) the accuracy of the witness' prior description;

4) the level of certainty demonstrated at the confrontation; and

5) the time between the crime and the confrontation.

*Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L.Ed. 2d 140, 154. Against these factors must be weighed the corrupting effect of the suggestive procedure itself. *Id.*

Applying this test to the victim's out-of-court identification, we hold that the trial court correctly concluded that this identification procedure did not violate defendant's due process rights. The victim had an excellent opportunity to view her assailant. The store was well-lit; the victim saw the defendant face-to-face three times before he attacked her and also during the attack itself. She had reason to pay close attention to him on his third trip to the cash register. She described her assailant to the police as a black man in his mid-twenties, about five feet nine inches or five feet ten inches tall, weighing about 190 pounds, of medium build with orange spots in his hair and no visible scars, and wearing cut-offs without shoes or shirt. Except for the specific pair of cut-offs, this description appears to fit defendant. The victim displayed no uncertainty about her choice. Finally, the identification was made within hours of the crime. When these factors are weighed against the suggestiveness in the identification procedure, there appears little likelihood that any misidentification occurred. The trial court accordingly did not err in allowing into evidence the victim's out-of-court and in-court identifications of defendant.

[2]   This same group of photographs was also shown to the two deliverymen who knew defendant. The trial court found that in each case the officer handed the witness the photographs and asked him to see if he recognized the person seen earlier in the store. Each witness selected defendant's photograph. Neither witness examined the photographs in the other's presence.

Again assuming for the purposes of this opinion that the use of this group of photographs was unnecessarily suggestive, we hold that the trial court nevertheless did not err in concluding that defendant's due process rights were not violated by admission of the out-of-court and in-court identifications of these two witnesses. As this Court has said before, the primary evil to be avoided is the likelihood of misidentification. *Flowers*, 318 N.C. 208, 347 S.E. 2d 773. In this case, there is no likelihood that either witness' identification was unduly influenced by the identification

procedure employed by the police. The trial judge found that each man had known defendant for some years. Each saw him twice in the convenience store, under good lighting conditions, and each recognized him at that time. One of the men paid particular attention to defendant because of his dress: although the morning was chilly, defendant wore only a pair of cut-offs. The other paid sufficient attention to come back into the store and speak to the victim about defendant. The "description" each man gave the police consisted of his name and other information about him and a brief description of his dress. Both witnesses were positive in their identification both in the convenience store and at their respective pretrial identification procedures. Their selection of defendant's photograph occurred within hours of the crime. When these factors are weighed against the suggestiveness in the photographs, there appears to be no likelihood that the use of the photographs influenced the witnesses' identification in any way.

## II.

[3] According to the record, on 12 July 1985, defendant submitted a written request for voluntary discovery pursuant to N.C.G.S. § 15A-902 (1983). In response, the State agreed to make available to defendant for his attorney's inspection "documents that are deemed subject to discovery under G.S. 15A-903(d)." Defendant's attorney was directed to contact the officer in charge of the investigation for an appointment to view. The "documents" so presented were the photographs from the lineup and photographs of the victim.

In the middle of the trial, however, the district attorney became aware of the existence of some photographs of the defendant showing scratches on his hands, arms and body. These photographs had been taken at the direction of the officer in charge of the investigation a couple of days after defendant's arrest. The district attorney showed the photographs to the defendant's attorney during the lunch recess and sought to have them admitted as illustrative evidence. Defendant's attorney moved for sanctions in the form of a mistrial. He contended that defendant would be irreparably harmed by the introduction of these photographs because, acting in reliance on the absence of such photographs among the materials produced in response to his request for preliminary discovery and a statement by one of the arresting

officers, he had told the jury in his opening speech that the State would offer no evidence of any scratches on defendant, and he had further cross-examined the victim to establish that her assailant should have had scratches. The trial judge denied defendant's motion, finding that defendant had had an opportunity to examine the photographs and that defendant would not be prejudiced by their admission.

Although there is no suggestion of bad faith on the part of the prosecutor, it is clear that the State nevertheless violated the discovery statutes in this instance. By responding without equivocation to defendant's request for voluntary discovery, the State assumed "the duty fully to disclose all of those items which could be obtained by court order." *State v. Anderson*, 303 N.C. 185, 192, 278 S.E. 2d 238, 242 (1981); *see also* N.C.G.S. § 15A-902(b) (1983). Photographs "within the possession, custody, or control of the State . . . which are material to the preparation of [defendant's] defense, [and] are intended for use by the State as evidence at the trial" are obtainable by court order. N.C.G.S. § 15A-903(d) (1983). We have previously said that " '[w]ithin the possession, custody, or control of the State' as used in these provisions means within the possession, custody or control of the prosecutor *or those working in conjunction with him and his office.*" *State v. Crews*, 296 N.C. 607, 616, 252 S.E. 2d 745, 752 (1979) (emphasis added). Thus, despite the prosecutor's personal ignorance of the photographs' existence, they were nevertheless in the State's "possession, custody or control" within the meaning of the statute at the time of defendant's discovery request. They were material to defendant's presentation of his case and were in fact introduced into evidence by the State. Accordingly, the photographs at issue were discoverable and should have been disclosed in the State's voluntary answer to defendant's request. The State's failure to do so rendered it subject to sanctions as set forth at N.C.G.S. § 15A-910 (1983).

However, the imposition of sanctions for failure to comply with discovery is entirely within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion. *State v. Alston*, 307 N.C. 321, 330, 298 S.E. 2d 631, 639 (1983). We find no such abuse in the instant case. Defendant was allowed ample time to examine the photographs before their introduction at trial. Although defendant had reason to believe that

State v. Pigott

there were no *photographs* at the time he made his opening statement and cross-examined the victim about scratches on her assailant, it appears from the record that he had no guarantee or reason to believe that the State was not going to produce *witnesses* to testify to scratches on defendant. There were in fact such witnesses. Accordingly, we do not believe that the trial judge abused his discretion in denying defendant's motion for mistrial.

For all of the reasons set forth in this opinion, we hold that defendant received a fair trial, free of prejudicial error.

No error.

Justice MEYER concurring.

I concur in all aspects of this Court's opinion, with the single exception of the holding that the district attorney, in response to pretrial discovery requests, erred in failing to disclose certain photographs showing scratches on defendant's body. The photographs in question were made shortly after the crime occurred at the direction of a Lieutenant Gause. They were not in the possession of the district attorney; he knew absolutely nothing of their existence; and as this Court's opinion makes clear, there has been no suggestion whatsoever of bad faith on his part.

Obviously, when a defendant files a request for voluntary discovery of photographs, the district attorney is duty bound to search his own files and to make reasonable inquiry of his assistants and the investigating officers as to the existence of the materials requested. It is, likewise, obvious that the district attorney may not refuse to make such examination and inquiry for the very purpose of avoiding discovery. Here, there has been no showing, or even any suggestion, that the district attorney did not make the proper examination of his files and inquiry of his assistants and the investigating officers as to the presence of the photographs in question.

This Court's opinion concedes that the district attorney did not become aware of the existence of the photographs in question until "the middle of the trial." The defendant's attorney candidly states in his brief to this Court:

The record discloses that during lunch of the second day of trial, the District Attorney became aware of the existence of State's Exhibits 27 through 36 and delivered them to counsel for the defendant at that time. The defendant does not question the prosecutor's good faith in having only belatedly produced the documents . . . .

(Citation omitted.) The record clearly indicates that as soon as the district attorney discovered the photographs in question, he made defense counsel aware of them and actually showed the photographs to him. He thus complied with defendant's discovery request as soon as he became aware of the existence of the requested photographs. It is my position that under the circumstances of this case, the district attorney's failure to disclose the photographs in question was not only not prejudicial error, but it was not error at all.

Justices MITCHELL and MARTIN join in this concurring opinion.