STATE OF NORTH CAROLINA v. RAYMOND LEVI ROBERTS

No. COA98-1589

(Filed 7 December 1999)

1. **Evidence— out-of-court identification—photographic lineup not unnecessarily suggestive**

The trial court did not err in a felony breaking or entering case when it denied defendant's motion to suppress the out-of-court identification evidence because: (1) defendant has not made the photographic lineup part of the record on appeal; (2) the fact that defendant was the only one pictured with freckles does not render the photographic lineup impermissibly suggestive per se; (3) the trial court specifically found the investigating officer who compiled the photographic lineup did the best she

STATE v. ROBERTS

[135 N.C. App. 690 (1999)]

could in including individuals with similar features to those described by the victim; and (4) even if the photographic lineup was impermissibly suggestive, it was not so suggestive that there was a substantial likelihood of irreparable misidentification.

## 2. Evidence— in-court identification—not fruit of the poisonous tree

Since the Court of Appeals already concluded defendant's photographic lineup in a felony breaking or entering case was not impermissibly suggestive, it also follows that the trial court did not err when it denied his motion to suppress the in-court identification evidence as the fruit of the poisonous tree.

## 3. Criminal Law— prosecutorial delay of calendaring—one instance not egregious violation

The trial court did not err in failing to dismiss the charges against defendant in a felony breaking or entering case under N.C.G.S. § 15A-954(a)(4) based on the theory that the prosecutor delayed trying the case once after it had been calendared in order to locate missing witnesses and thereby gain a tactical advantage because an isolated allegation of prosecutorial delay does not rise to the level of repeated egregious violations.

## 4. Burglary and Unlawful Breaking or Entering— intent to commit felony—sufficiency of the evidence

The trial court did not err in a felony breaking or entering case for failing to grant defendant's motion to dismiss for insufficiency of the evidence as to defendant's intent to commit the felony because: (1) defendant has not offered any exculpatory evidence as to his intent, and intent may be inferred from the circumstances whether it is daytime or nighttime; and (2) even though defendant claims he made a statement to the victim that he was there to wash the windows, that evidence was excluded upon defendant's own hearsay objection, and evidence not introduced at trial cannot be considered.

## 5. Jury— selection—question about eyewitness identification—not improper stake-out

The prosecution did not impermissibly stake out jurors during jury selection in a felony breaking or entering case by asking if they had a per se problem with eyewitness identification because questions designed to measure prospective jurors' ability to follow the law are proper within the context of jury selection

voir dire since they tend to only secure impartial jurors and do not cause the jurors to commit to a future course of action.

## 6. Criminal Law— instruction on flight—some evidence of attempting to avoid apprehension

The trial court did not err in a felony breaking or entering case by instructing the jury on the issue of flight because there is some evidence in the record reasonably supporting the theory that defendant fled after the commission of the crime charged in order to avoid apprehension.

## 7. Sentencing— habitual felon—status—not substantive offense—notice of prosecution as recidivist

The trial court did not err in a felony breaking or entering case by sentencing defendant as an habitual felon even though the indictment did not specifically allege that defendant had committed a new felony while being an habitual felon because being an habitual felon is a status and not a substantive offense, and the only pleading requirement is that defendant be given notice he is being prosecuted for some substantive felony as a recidivist.

Appeal by defendant from judgment entered 16 October 1997 by Judge J. Milton Read, Jr., in Durham County Superior Court. Heard in the Court of Appeals 20 October 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Daniel Shatz for defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 13 October 1997 session of Durham County Superior Court for felony breaking and entering and for being an habitual felon. The jury returned a verdict on 16 October 1997, finding him guilty of felony breaking and entering and further finding him to be an habitual felon. Defendant now appeals.

At trial, the State's evidence tended to show that on Sunday morning, 7 July 1996, at about 7:00 a.m., LaToya Thorpe was awakened by a man climbing through her bedroom window. She observed him for about forty-five seconds and detected that he was unarmed. She then ran to get her grandmother and uncle, who were also living in the house. When her uncle returned to the bedroom, the intruder was

STATE v. ROBERTS

[135 N.C. App. 690 (1999)]

gone. When police inspected the area outside the window, they observed that a trash barrel had been moved directly underneath the window and that the window screen had been torn off. Ms. Thorpe described the man as a light or red-skinned African-American with a goatee and freckles around his nose and cheeks. After further investigation, the police began to suspect that defendant was the intruder. They prepared a photographic lineup that included defendant's picture and showed it to Ms. Thorpe. Without hesitation, she positively identified the intruder as defendant.

[1] Defendant first contests the trial court's denial of his motion to suppress the identification evidence. He maintains that both the out-of-court and in-court identifications of defendant were inherently flawed, in violation of his right to due process. Each will be analyzed in turn.

The standard for out-of-court identifications in this state is well-settled. "Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). Thus, in the context of photographic lineups, a positive identification must be suppressed only if the photographic lineup itself is both (1) "impermissibly suggestive" and (2) so suggestive that "irreparable misidentification" is likely. *State v. Pigott*, 320 N.C. 96, 99-100, 357 S.E.2d 631, 633-34 (1987). The failure of either requirement defeats defendant's due process claim.

Defendant argues the photographic lineup here was impermissibly suggestive because, of the six African-American men in the lineup, only two had a light complexion and only one (the defendant) had freckles. Inexplicably, however, defendant has not made the photographic lineup part of the record on appeal. So we have no way of determining whether the lineup was unnecessarily suggestive except by the bald assertions of the defendant. After a thorough review of the record, including both the pre-trial and trial transcripts, we conclude that defendant's contentions are without merit.

"The mere fact that defendant ha[s] specific identifying characteristics not shared by the other participants does not invalidate the lineup." *State v. Gaines*, 283 N.C. 33, 40, 194 S.E.2d 839, 844 (1973). Thus, the fact that defendant was the only one pictured with freckles does not render the photographic lineup impermissibly suggestive

*per se.* Furthermore, at the voir dire hearing on defendant's motion to suppress, the trial court specifically found that the investigating officer who compiled the photographic lineup did the best she could in including individuals with similar features to those described by Ms. Thorpe, but the police department's files simply included no pictures of African-American men with freckles. Defendant has not excepted to this finding, and it is thus conclusive on appeal. *State v. Fisher,* 321 N.C. 19, 24, 361 S.E.2d 551, 554 (1987). Accordingly, defendant's own unique physical appearance was what rendered him conspicuous in the lineup, not any suggestive police procedures. Defendant's unique physical appearance was "simply an existing fact," and the police's inability to include individuals in the lineup that shared defendant's unique physical appearance "cannot be attributed to the officers or regarded as the kind of rigged 'suggestiveness' in identification procedures [prohibited by due process]." *State v. Rogers,* 275 N.C. 411, 429, 168 S.E.2d 345, 356 (1969), *cert. denied,* 396 U.S. 1024, 24 L. Ed. 2d 518 (1970). We therefore conclude that this was not an impermissibly suggestive lineup.

Moreover, even if the photographic lineup was impermissibly suggestive, we conclude that it was not so suggestive that there was a "substantial likelihood of irreparable misidentification." *Harris,* 308 N.C. at 162, 301 S.E.2d at 94. In analyzing this part of the inquiry, our courts look at the totality of the circumstances, guided by five factors: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated by the witness at the pre-trial identification; and (5) the time between the crime and the pre-trial identification. *Pigott,* 320 N.C. at 99-100, 357 S.E.2d at 634.

The circumstances here show there was not a substantial likelihood of irreparable misidentification. Ms. Thorpe had an opportunity to view the perpetrator for approximately forty-five seconds, her description to the police "matches to an absolute T" the appearance of the defendant (Motions Tr. at 69), she had no hesitancy in identifying defendant, and the photographic lineup was shown to her only nine days after the crime. Accordingly, the trial court did not err in denying defendant's motion to suppress the pre-trial identification.

[2] Defendant also contends that Ms. Thorpe's in-court identification of defendant should have been suppressed because it was tainted by the impermissibly suggestive photographic lineup. However, because

the lineup itself was not impermissibly suggestive (and thus not a "poisonous tree"), the in-court identification could not possibly be suppressed as the fruit of a poisonous tree. *See generally State v. Daughtry*, 340 N.C. 488, 507, 459 S.E.2d 747, 756 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996); *State v. Medlin*, 333 N.C. 280, 295, 426 S.E.2d 402, 409 (1993). We therefore reject his argument.

**[3]** Next, defendant argues that his charges should have been dismissed pursuant to N.C. Gen. Stat. § 15A-954(a)(4). That subsection permits dismissal when "[t]he defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C. Gen. Stat. § 15A-954(a)(4) (1997). Here, defendant contends that the prosecution engaged in calendar abuse, thereby warranting dismissal. We disagree.

A motion to dismiss under section 15A-954(a)(4) is to be granted only sparingly. *State v. Joyner*, 295 N.C. 55, 59, 243 S.E.2d 367, 370 (1978). In his formal motion to the trial court, defendant's only argument was that the North Carolina statutes give the prosecution too much control over the calendaring process and case management, in violation of a defendant's constitutional rights. This facial constitutional challenge has already been rejected by our Supreme Court, and we need not readdress it here. *See Simeon v. Hardin*, 339 N.C. 358, 375-77, 451 S.E.2d 858, 869-71 (1994).

Only at the hearing on his motion to dismiss did defendant even suggest an as-applied challenge. Our Supreme Court permitted such a challenge in *Simeon*, where Simeon alleged the prosecution repeatedly delayed calendaring his case in order to keep him and other defendants in jail, had delayed trying him when it was likely he would be acquitted, and had pressured him to plead guilty. *Id.* at 378, 451 S.E.2d at 871-72. Defendant's only claim of abuse here is that the prosecution delayed trying his case once after it had been calendared in order to locate missing witnesses and thereby gain a tactical advantage. This one isolated allegation of prosecutorial delay does not rise to the level of the repeated, egregious violations in *Simeon*. Accordingly, defendant's motion to dismiss was properly denied.

**[4]** Defendant also contends the trial court should have granted his motion to dismiss for insufficient evidence. The standard for ruling on a motion to dismiss for lack of evidence is well-settled. The trial court must determine whether the State has offered substantial evi-

dence of defendant's guilt as to each element of the crime charged. *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981). In doing so, however, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *Id.* Felony breaking and entering involves (1) a breaking or entering (2) into a building (3) without consent (4) with an intent to commit a felony therein. N.C. Gen. Stat. § 14-54(a) (1993); N.C.P.I., Crim. 214.30. Here, defendant argues there was insufficient evidence to establish that he had any intent to commit a felony. We disagree.

The requisite intent for felony breaking and entering need not be directly proved it may be inferred from the circumstances. *State v. Myrick*, 306 N.C. 110, 115, 291 S.E.2d 577, 580 (1982). In fact, "[w]ithout other explanation for breaking into the building or a showing of the owner's consent," the requisite intent can be inferred. *Id.* Here, defendant's only explanation offered was a statement he purportedly made to Ms. Thorpe to the effect that he was there to wash the windows. However, that particular statement was never even before the jury, as it was excluded upon defendant's own hearsay objection. It goes without saying that, when viewing all evidence in favor of the State for purposes of a motion to dismiss, we cannot consider evidence not introduced at trial. Accordingly, because defendant has offered no exculpatory evidence as to his intent, that intent could properly be inferred under the circumstances here.

Defendant nonetheless asserts that this inference as to intent only applies at nighttime. He bases his argument on the following language from our Supreme Court regarding inferred intent:

> The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others *in the night time* [sic], when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also.

*State v. McBryde*, 97 N.C. 393, 396, 1 S.E. 925, 927 (1887) (emphasis added). We find defendant's argument unpersuasive. *McBryde* and most of the cases applying this so-called *McBryde* inference involved inferring intent in the context of a burglary charge. One of the elements of burglary is that the crime occur at nighttime. *State v. Dalton*, 122 N.C. App. 666, 669, 471 S.E.2d 657, 659 (1996). Thus, the *McBryde* court's reference to nighttime was more a reference to the

underlying burglary charge than a judicial pronouncement that the inference of intent only applies to crimes at night. In fact, this Court has previously applied the inference to breakings and enterings during the daytime. *See, e.g., State v. Costigan,* 51 N.C. App. 442, 445, 276 S.E.2d 467, 469 (1981). The trial court therefore properly rejected defendant's motion to dismiss based upon insufficient evidence.

**[5]** Next, defendant argues that the prosecution impermissibly staked out jurors during jury selection. Defendant points to the following *voir dire* questioning as being improper:

> Does anyone here have a per se problem with eyewitness identification? Meaning, it is in and of itself going to be insufficient to deem a conviction in your mind, no matter what the Judge instructs you as to the law. Per se unreliability of eyewitness identification.

It is certainly true that counsel may not pose hypothetical questions intended to elicit a prospective juror's decision in advance as to a particular set of facts or evidence. *State v. Vinson,* 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *death penalty vacated,* 428 U.S. 902, 49 L. Ed. 2d 1206 (1976). "[S]uch questions tend to 'stake out' the juror and cause him to pledge himself to a future course of action." *Id.* It is equally true, however, that the right to an impartial jury contemplates inquiry by each side to ensure a prospective juror can follow the law. *State v. Jones,* 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997). Accordingly, "[q]uestions designed to measure a prospective juror's ability to follow the law are proper within the context of jury selection *voir dire.*" *Id.* Here, the prosecution was simply trying to ensure that the jurors could follow the law with respect to eyewitness testimony that is, treat it no differently than circumstantial evidence. The prosecution's questions then "tended only to 'secure impartial jurors,' [and did] not caus[e] them to commit to a future course of action." *State v. McKoy,* 323 N.C. 1, 15, 372 S.E.2d 12, 19 (1988), *death penalty vacated,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

**[6]** Through another assignment of error, defendant argues that the trial court erred by instructing the jury on the issue of flight. We disagree. Jury instructions pertaining to the issue of flight are proper so long as there is "some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *State v. Fisher,* 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994), *cert. denied,* 513 U.S. 1098, 130 L. Ed. 2d 665 (1995). Mere evidence that defendant left the scene is not enough; there must be some

evidence suggesting defendant was avoiding apprehension. *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991). The evidence here showed that Ms. Thorpe awoke to see defendant climbing through her window, that she exchanged some words with defendant, and then left the room to get her uncle and grandmother. When she returned, defendant was nowhere to be found. This evidence suggests defendant feared Ms. Thorpe would call the police and thus ran away to avoid possible apprehension. Accordingly, an instruction on flight was warranted.

**[7]** Finally, defendant argues he should not have been sentenced as an habitual felon because his habitual felon indictment was flawed. The indictment alleged that defendant was an habitual felon and then listed his three prior felony convictions; this permitted the State to indict him as an habitual felon. The indictment did not specifically allege that defendant had committed a new felony while being an habitual felon. This, defendant maintains, renders the indictment insufficient as a matter of law. We disagree.

In *State v. Cheek*, 339 N.C. 725, 453 S.E.2d 862 (1995), our Supreme Court held that the habitual felon indictment need not specifically list the new felony defendant allegedly committed. *Id.* at 728, 453 S.E.2d at 864. Defendant nonetheless maintains that *Cheek* still requires the indictment to allege that *some* new felony was committed. He correctly points out that "[b]eing an habitual felon is not a crime but is a status . . . . The status itself, standing alone, will not support a criminal sentence." *State v. Allen*, 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977). He then argues that, since criminal pleadings and indictments must contain every element necessary for conviction, N.C. Gen. Stat. § 15A-924(a)(5) (1997), the habitual felon indictment must make some reference to. a new felony being committed in order to fulfill all the necessary elements of being an habitual felon.

Defendant, however, defeats his own argument. As he points out, being an habitual felon is not a substantive criminal offense, but is rather a status. Were it a substantive offense, then section 15A-925(a)(5)'s requirement that each element of the crime be pleaded would certainly apply. But because being an habitual felon is *not* a substantive offense, the only pleading requirement is that defendant be given notice "that he is being prosecuted for some substantive felony *as a recidivist.*" *Allen*, 292 N.C. at 436, 233 S.E.2d at 588. Defendant's habitual felon indictment complied with that

notice requirement here. Defendant's final assignment of error is therefore overruled.

No error.

Judges JOHN and McGEE concur.