STATE OF NORTH CAROLINA v. LOVETT HENDERSON

No. COA01-1501

(Filed 21 January 2003)

### 1. Criminal Law— denominating prosecuting witnesses as victims—no showing of undue prejudice

The trial court did not err in a first-degree sex offense and taking indecent liberties with children case by denominating the prosecuting witnesses as victims when it instructed the jury during the trial on the limitation on expert testimony and when it instructed on first-degree sexual offense, because: (1) defendant has not shown undue prejudice arising from the use of the term victim so as to justify awarding a new trial when the trial court was not intimating that defendant had committed any crime and

STATE v. HENDERSON

[155 N.C. App. 719 (2003)]

the word victim is included in the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges; and (2) the statement by the trial court in the instruction was not an effort to set forth a contention of the State.

## 2. Jury— selection—requirement of medical finding—not improper stakeout question

The prosecutor's question to prospective jurors in a first-degree sexual offense and taking indecent liberties with children case regarding whether the jurors would require a medical finding in order to convict was not an improper stakeout question because the purpose was to secure an impartial jury rather than to commit the jurors to a future course of action.

## 3. Discovery— school documents—in camera review

The trial court did not err in a first-degree sex offense and taking indecent liberties with children case by failing to disclose to defendant certain documents regarding the complaining witnesses including school documents, because an in camera review of the documents by the Court of Appeals revealed that the documents do not contain information favorable to the accused and material to guilt or punishment.

Appeal by defendant from judgment entered 26 April 2001 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant appellant.*

McCULLOUGH, Judge.

Defendant Lovett Henderson was indicted on six counts of first-degree sex offense and seven counts of taking indecent liberties with children on 31 January 2000. Briefly, the State's evidence showed that defendant, born on 29 July 1964, had married the mother of the alleged victim. The victim was born on 26 May 1988. After the marriage, the mother and her seven children lived with defendant and his two children. According to the victim and other girls in the family, the family lived in a house together from 1993-95. During this time, defendant would sexually molest the girls, the victim in particular.

STATE v. HENDERSON

[155 N.C. App. 719 (2003)]

On one occasion, defendant had the victim perform fellatio upon him. Defendant also took the victim from her school while she was at recess, taking her back to the house and digitally penetrating her. Defendant digitally penetrated the victim and two other girls in the house on a different occasion, right after the girls had finished taking their baths. Defendant also got the same girls out of bed and took them into the living room, where he again digitally penetrated them while their mother was at church.

The jury found defendant guilty of one count of first-degree sex offense and three counts of taking indecent liberties with a child on 26 April 2001. Defendant was found to have a prior record level II, and was sentenced to a minimum term of 240 months and maximum term of 297 months for the first-degree sex offense, and a minimum of 14 months and maximum of 17 months for each indecent liberties offense. The indecent liberties sentences are to run concurrently with each other, but consecutively with the sex offense sentence. Defendant appeals.

Defendant makes several assignments of error, and urges on appeal that the trial court erred in (I) denominating the prosecuting witnesses as "victims"; (II) overruling the defendant's objection to the question of the prosecutor regarding whether a juror would require a medical finding in order to convict, inasmuch as this was improper "staking out" of the prospective jurors; and (III) not disclosing to defendant certain documents regarding the complaining witnesses, inasmuch as this ruling denied the defendant's state and federal constitutional rights to present a defense and to due process of law.

I.

[1] Defendant first argues that the trial court erred by referring to the prosecuting witnesses as "victims." The trial court did so when it instructed the jury during the trial on the limitation on expert testimony. This instruction included language to the effect that the "victim" exhibited certain characteristics. See N.C.P.I., Crim. 104.96 (1992). Defendant objected and requested the trial court to use a different term, only to be overruled. The trial court continued to follow the pattern instruction. Later, at the charge conference, defendant specifically objected to the use of the term "victim" in the instruction on first-degree sexual offense, N.C.P.I., Crim. 207.45.1 (1986). Again, defendant's objection was overruled, and the trial court used the language of the pattern instruction.

Defendant contends that this was error because the references assumed that the State had proven an element of its case, that the children had indeed been wronged by defendant.

> Section 15A-1222 of the North Carolina General Statutes provides that "[t]he judge may not express during any stage of the trial[ ] any opinion in the presence of the jury on any question of fact to be decided by the jury." Similarly, section 15A-1232 of the North Carolina General Statutes requires that "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." In applying these statutes, we have stated that
>
> > "[i]n evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." Further, a defendant claiming that he was deprived of a fair trial by the judge's remarks has the burden of showing prejudice in order to receive a new trial.

*State v. Anthony*, 354 N.C. 372, 402, 555 S.E.2d 557, 578 (2001), (citations omitted), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002).

In *State v. Allen*, 92 N.C. App. 168, 374 S.E.2d 119 (1988), *cert. denied*, 324 N.C. 544, 380 S.E.2d 772 (1989), this Court has held the use of the term "victim" is generally harmless error.

> By his use of the term "victim," the trial judge was not intimating that defendant had committed any crime. The judge properly instructed the jury that it had to find that defendant committed all the elements of the offenses charged before they could find defendant guilty, regardless of whether the child was referred to as the "victim," the prosecuting witness, or by any other term. In order for defendant to be entitled to a new trial, he must show not only that an instruction was erroneously given, but also that the instructions as given materially prejudiced him. Assuming arguendo that the instructions were erroneous, defendant has not shown any material prejudice.

*Allen*, 92 N.C. App. at 171, 374 S.E.2d at 121 (citation omitted).

While it is clear from case law that the use of the term "victim" in reference to prosecuting witnesses does not constitute plain error when used in instructions, it is a matter of prejudice, as in *Allen*,

when a defendant properly objects. *See State v. Cabe,* 136 N.C. App. 510, 514-15, 524 S.E.2d 828, 832, *disc. review denied, appeal dismissed,* 351 N.C. 475, 543 S.E.2d 496 (2000); *State v. Hatfield,* 128 N.C. App. 294, 299, 495 S.E.2d 163, 165-66, *disc. review denied,* 348 N.C. 75, 505 S.E.2d 881, *cert. denied,* 525 U.S. 887, 142 L. Ed. 2d 165 (1998); *State v. Richardson,* 112 N.C. App. 58, 66-67, 434 S.E.2d 657, 663 (1993), *disc. review denied,* 335 N.C. 563, 441 S.E.2d 132 (1994). Defendant argues that the State's case was very weak at trial and offers the fact that defendant was acquitted of 9 of the 13 charges brought against him. Defendant submits that the use of the term "victim" may well have made the difference in the remaining counts.

We do not feel that defendant has shown undue prejudice arising from the use of the term "victim" so as to justify awarding a new trial. As in *Allen,* the trial court was not intimating that he had committed any crime. "The word 'victim' is included in the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges and is used regularly to instruct on the charges of first-degree rape and first-degree sexual offense." *Richardson,* 112 N.C. App. at 67, 434 S.E.2d at 663. While defendant makes a valid point that the use of a more neutral term such as "alleged victim" or "complainant" would remove any possibility that the jury would confuse the trial court's instruction for the comments on the evidence, defendant has failed to show prejudicial error for the trial court to follow the pattern jury instructions.

Defendant also contends that the instruction sets out a contention by the State, that the children were, in fact, victims, without also setting out defendant's contention that the children were victimizing defendant with false allegations. "A trial judge does not have to state the contentions of the parties. However, when he undertakes to do so he must give equal stress to the contentions of both sides." *State v. Hough,* 299 N.C. 245, 257, 262 S.E.2d 268, 275 (1980). However, the statement by the trial court in the instruction was not an effort to set forth a contention of the State. In addition, the trial court specifically instructed that:

I have not reviewed the contentions of the State or of the defendant. But it is your duty not only to consider all the evidence, but also consider all the arguments and the contentions and positions urged by the State's attorney and by the defense attorney in their speeches to you. And consider any other contention that

arises from the evidence and to weigh them in light of your own common sense and as best you can to determine the truth of this matter.

Therefore, this assignment of error is overruled.

## II.

**[2]** Defendant next contends that the trial court erred in allowing certain questions by the State to prospective jurors. These questions, defendant asserts, constituted impermissible "staking out" of the jurors and should have been excluded.

The exchange took place as follows:

[State]: In the witness list that was read to you, there were a couple of different doctors that were mentioned. I do expect that those doctors are going to testify. They are going to testify about examinations that they did on [the victim]. They are going to tell you what their findings are.

Now, is there anybody, any of the five of you, who thinks that in order for you to make a decision in these cases, in order to convince you beyond a reasonable doubt, that there has to be some finding made by a physician that tells you that something definitely occurred?

[Defendant]: Objection, your Honor. That's for a jury to determine at the end of all the evidence what satisfies them.

THE COURT: Okay. Your question was—had you finished your question?

[State]: Yes, sir.

THE COURT: Or the question was—

[State]: Whether they personally would—in order to find beyond a reasonable doubt—would require medical findings that would tell them specifically that the incident occurred.

THE COURT: Overruled.

[State]: That means you can answer the question does anybody feel that? Would you have to have that kind of information in order to make a decision? [Juror], are you thinking?

[Juror]: I didn't quite understand what you're saying.

[State]: Okay.

[Juror]: You're saying that—

[State]: Go ahead.

[Juror]: You're saying that that would be 75 percent of my decision-making as far as what the doctor said in the trial as evidence? Is that what you're saying? That I would think—

[State]: Let me rephrase it. Just—the other three have given a negative response that they would not require that, if I saw everybody's head moving in the right direction. Every juror gets to make up their own mind after you deliberate about who you believe, what you believe, and whether you have had one or more offenses proved to you beyond a reasonable doubt. You all get to make up your own mind. And what I'm asking is for you personally, in order for you, with these charges, to be able to find one guilty beyond a reasonable doubt, are you going to require that there be medical evidence that affirmatively says an incident occurred?

[Defendant]: Objection.

THE COURT: What was the question? I'm going through some—

[State]: It essentially was the same question.

[Defendant]: We objected in order to find guilt.

THE COURT: All right. Sustained.

[State]: In order to be convinced beyond a reasonable doubt?

[Defendant]: Objection.

THE COURT: Well, overruled.

[Juror]: No.

Three of the five prospective jurors exposed to this line of questions ultimately wound up on the jury.

The trial court has a great deal of discretion in monitoring the propriety of questions asked by counsel during *voir dire*, and the standard of review on this issue is whether the trial court abused its discretion and whether that abuse resulted in harmful

prejudice to defendant. *State v. Jones*, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997).

> On the voir dire examination of prospective jurors, hypothetical questions so phrased as to be ambiguous and confusing or containing incorrect or inadequate statements of the law are improper and should not be allowed. Counsel may not pose hypothetical questions designed to elicit in advance what the juror's decision will be under a certain state of the evidence or upon a given state of facts. In the first place, such questions are confusing to the average juror who at that stage of the trial has heard no evidence and has not been instructed on the applicable law. More importantly, such questions tend to "stake out" the juror and cause him to pledge himself to a future course of action. This the law neither contemplates nor permits. The court should not permit counsel to question prospective jurors as to the kind of verdict they would render, or how they would be inclined to vote, under a given state of facts.

*State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *vacated in part*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976).

Further,

> [c]ounsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. Counsel should not argue the case in any way while questioning the jurors. Counsel should not engage in efforts to indoctrinate, visit with or establish "rapport" with jurors. Jurors should not be asked what kind of verdict they would render under certain named circumstances. Finally, questions should be asked collectively of the entire panel whenever possible.

*State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980).

Defendant argues that the State has violated these principles in the reproduced exchange. The State counters by pointing out that the law does not require medical evidence to corroborate a victim's story as the victim's word alone is sufficient evidence upon which a jury can convict. *See State v. Rogers*, 322 N.C. 102, 366 S.E.2d 474 (1988). Thus, the State's question was solely seeking an impartial jury.

This Court addressed a similar situation in *State v. Roberts*, 135 N.C. App. 690, 522 S.E.2d 130 (1999), *appeal dismissed, disc. review*

STATE v. HENDERSON

[155 N.C. App. 719 (2003)]

*denied*, 351 N.C. 367, 543 S.E.2d 142 (2000). In that case, the State asked the following question:

Does anyone here have a per se problem with eyewitness identification? Meaning, it is in and of itself going to be insufficient to deem a conviction in your mind, no matter what the Judge instructs you as to the law. Per se unreliability of eyewitness identification.

*Id.* at 697, 522 S.E.2d at 134-35. Defendant argued that this question was an improper "stake out" question. That Court stated that

[while] counsel may not pose hypothetical questions intended to elicit a prospective juror's decision in advance as to a particular set of facts or evidence . . . [i]t is equally true . . . that the right to an impartial jury contemplates inquiry by each side to ensure a prospective juror can follow the law. Accordingly, "[q]uestions designed to measure a prospective juror's ability to follow the law are proper within the context of jury selection *voir dire.*"

*Id.* at 697, 522 S.E.2d at 135 (citations omitted).

Having set out the law, the Court held that the State was "simply trying to ensure that the jurors could follow the law with respect to eyewitness testimony[,] that is, treat it no differently than circumstantial evidence." *Id.* Thus, the State's question " 'tended only to "secure impartial jurors," [and did] not caus[e] them to commit to a future course of action.' " *Id.* (quoting *State v. McKoy*, 323 N.C. 1, 15, 372 S.E.2d 12, 19 (1988), *cert. granted*, 489 U.S. 1010, 103 L. Ed. 2d 180 (1989), *judgment vacated*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

We agree with the State and hold that the questions pertaining to expert testimony and the importance of the presence of physical evidence were attempts to secure an impartial jury rather than commit the jurors to a future course of action. Indeed the law does not require medical evidence that states that some incident has occurred. The question, "To be able to find one guilty beyond a reasonable doubt, are you going to require that there be medical evidence that affirmatively says an incident occurred?" is not the same as asking "if there is medical evidence stating that some incident has occurred, will you find defendant guilty beyond a reasonable doubt?" The latter question would appear to be clearly impermissible, regardless of the fact that the law does not require medical evidence. This assignment of error is overruled.

STATE v. HENDERSON

[155 N.C. App. 719 (2003)]

### III.

**[3]** Defendant's final assignment of error takes issue with the trial court's denial of defendant's request for certain school documents relating to the victim and other complaining witnesses.

Defendant learned from initial discovery that there was evidence that defendant took the witnesses from the school grounds, abused them at some other location, and then returned them to school without anyone knowing. To impeach such testimony, defendant subpoenaed the school records of the witnesses in hopes to use them to show that the witnesses could not have been taken from the school grounds without school authorities being aware of it and thus implying that defendant never took them from the school. Such impeachment was considered very important by defendant in that there was no physical evidence of abuse, and anticipated that the case would come down to the credibility of the witnesses.

The trial court reviewed the subpoenaed documents *in camera*. The trial court granted that defendant was entitled to discover some of the materials; and the remaining materials, namely the school records, were sealed for appellate review. Defendant asks this Court to review the sealed documents to determine whether they include exculpatory evidence.

> A defendant who is charged with sexual abuse of a minor has a constitutional right to have [certain government records] as they pertain to the prosecuting witness, turned over to the trial court for an *in camera* review to determine whether the records contain information favorable to the accused and material to guilt or punishment. If the trial court conducts an *in camera* inspection but denies the defendant's request for the evidence, the evidence should be sealed and "placed in the record for appellate review." On appeal, this Court is required to examine the sealed records to determine if they contain information that is "both favorable to the accused and material to [either his] guilt or punishment." If the sealed records contain evidence which is both "favorable" and "material," defendant is constitutionally entitled to disclosure of this evidence.

*State v. McGill,* 141 N.C. App. 98, 101-02, 539 S.E.2d 351, 355 (2000) (citations omitted). Evidence is "favorable" if it tends to exculpate the accused, as well as " 'any evidence adversely affecting the credibility of the government's witnesses.' " *Id.* at 102, 539 S.E.2d at

355 (quoting *U.S. v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996)). " '[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *Id.* at 103, 539 S.E.2d at 356 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985)). The failure of the trial court to turn over evidence to defendant that was both favorable and material to him does not guarantee a new trial, unless such failure was prejudicial. *Id.*

We have reviewed the documents, including the school records, provided to this Court under seal pursuant to the order of the trial court on 16 March 2001. These documents do not contain "information favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58, 94 L. Ed. 2d 40, 58 (1987). Therefore, this assignment of error is also overruled.

No error.

Judges TYSON and BRYANT concur.