STATE v. BOYETT

[224 N.C. App. 101 (2012)]

STATE OF NORTH CAROLINA
v.
BILLY BOYETT

No. COA12-222

Filed 4 December 2012

**1. Rape—attempted second-degree—penetration—conflicting evidence**

The trial court committed plain error by failing to instruct the jury on attempted second-degree rape and attempted incest where the victim's testimony could support both the proposition that the defendant penetrated her and that he did not. This holding has no bearing on defendant's second-degree sexual offense convictions, which do not require penetration.

**2. Sexual Offenses—instructions—use of "victim"**

Any error was harmless in a prosecution for multiple sex offenses where the trial court used the victim's name when referring to the elements of the crime but used the term "victim," as found in the pattern jury instructions, when describing the generic definition of the crime. The trial court was not intimating any opinion by using the word "victim."

**3. Appeal and Error—preservation of issues—no objection at trial—violation of statutory mandate**

The right to appeal is preserved notwithstanding defendant's failure to object at trial when the trial court acts contrary to statutory mandates and defendant is prejudiced. This defendant's appeal from orders directing him to register as a sex offender and to enroll in lifetime satellite-based monitoring was heard for that reason.

**4. Satellite-Based Monitoring—aggravated offense—penetration—second-degree sexual offense**

The trial court erred by entering an order requiring that defendant enroll in satellite-based monitoring on the basis that his second-degree sexual offense conviction constituted an aggravated offense. Without a review of the underlying factual scenario giving rise to the second-degree sexual offense conviction, the trial court could not have determined whether defend-

ant's second-degree sexual offense involved penetration, as required for an aggravated offense.

**5. Sexual Offenders—lifetime registration—aggravated offense—reportable offense**

The trial court erred by finding that defendant's conviction for second-degree sexual offense was an aggravated offense and then ordering registration as a sex offender for life where that determination could not have been made without reviewing the underlying facts. However, defendant's second-degree sexual offense conviction constituted a reportable offense, and, on remand, the trial court may require defendant to register as a sex offender for a period of 30 years.

Appeal by Defendant from judgments entered 10 October 2011 by Judge Charles H. Henry in New Hanover County Superior Court. Heard in the Court of Appeals 28 August 2012.

*Roy Cooper, Attorney General, by Sarah Meacham, Assistant Attorney General, for the State.*

*Russell J. Hollers III, for the Defendant.*

THIGPEN, Judge.

Defendant appeals from judgments entered convicting him of six counts of second-degree rape, ten counts of second-degree sexual offense, and six counts of incest, challenging the trial court's instructions to the jury, the trial court's use of the word "victim" in the jury instructions, and the trial court's order requiring that Defendant be subject to lifetime registration as a sex offender and lifetime enrollment in satellite-based monitoring.

The evidence of record tends to show the following: In February 2010, the stepfather of J.B.[1]("the victim") listened in on a telephone conversation between the victim and her grandfather, Billy Boyett ("Defendant")—by means of a telephone extension in another room—during which time the stepfather overheard Defendant ask the victim when he could again have sexual interactions with her. The stepfather confronted the victim, and the victim confided in her mother and stepfather that Defendant had engaged in sexual intercourse with her numerous times. The victim said that, since her

---

1. The victim's name has been redacted to protect the identity of the victim.

eighteenth birthday,[2] Defendant had approached her for sex. The victim explained that she had performed fellatio on Defendant, that Defendant had inserted his finger into her vagina, and that Defendant had attempted to have vaginal intercourse with her. The victim would say, "No," attempting to avoid the sexual encounters by tightening her legs and turning her face away. Defendant, however, would push her legs apart, and, sometimes, it hurt the victim. The victim estimated that Defendant had approached her for sex approximately fifty times, that she had performed fellatio on Defendant five or more times, and that Defendant had digitally penetrated her vagina five or more times. Defendant's last sexual contact with the victim was in January 2010.

A Sheriff's detective spoke with the victim and Defendant, at which time the victim told the detective about her sexual encounters with Defendant. Defendant also admitted to the detective that the victim had performed fellatio on him and that he had digitally penetrated her vagina.

Defendant was indicted on ten counts each of second-degree rape, second-degree sexual offense,[3] and incest. Defendant was tried at the 3 October 2011 session of New Hanover County Superior Court, and the jury found Defendant guilty of six counts of second-degree rape, ten counts of second-degree sexual offense, and six counts of incest. The trial court entered judgments, consistent with the jury's verdicts, sentencing Defendant consecutively to 73 to 97 months incarceration on the second-degree rape convictions, 73 to 97 months incarceration on the second-degree sexual offense convictions, and 13 to 16 months on the incest convictions. The trial court also ordered Defendant to register as a sex offender for his lifetime and to enroll in lifetime satellite-based monitoring.

---

2. Defendant did not initiate sexual contact with the victim prior to her eighteenth birthday.

3. All ten second-degree sexual offense charges were based on both of two theories of the crime provided by N.C. Gen. Stat. § 14-27.5(a): (1) that Defendant engaged in the sexual act "[b]y force and against the will of the other person[,]" or (2) that Defendant engaged in the sexual act "with another person . . . [w]ho is mentally disabled, mentally incapacitated, or physically helpless[.]" *Id.* The evidence of record showed that, in 2009, the victim received a psychological assessment after which she was diagnosed with a depressive disorder and "mild mental retardation." The psychologist testified that "it would be difficult for [the victim] to disobey an authority figure[.]" There was also evidence sufficient for the question of whether Defendant used or threatened force to be properly one for the jury.

## I. Jury Instructions

**[1]** In Defendant's first argument, he contends the trial court committed plain error by failing to instruct the jury on attempted second-degree rape and attempted incest. We agree.

Defendant did not properly preserve this issue for appeal by lodging an objection at trial, but requests that the Court review for plain error. "Plain error analysis applies to evidentiary matters and jury instructions." *State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634, *cert. denied*, ___ U.S. ___, 175 L. Ed. 2d 362 (2009).

"A prerequisite to our engaging in a plain error analysis is the determination that the instruction complained of constitutes error at all[;] [t]hen, [b]efore deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (internal quotation marks omitted)).

In determining whether there was error in a jury instruction, this Court has stated, "[i]t is elementary that the trial court, in its instructions to the jury, is required to declare and explain the law arising on the evidence." *State v. Anderson*, 40 N.C. App. 318, 321, 253 S.E.2d 48, 50 (1979) (citing N.C. Gen. Stat. § 15A-1232). With regard to jury instructions on attempts and lesser included offenses, "[a] trial court is only required to instruct the jury on a lesser included offense when there is evidence presented from which the jury could find that such offense was committed." *State v. Stinson*, 127 N.C. App. 252, 258, 489 S.E.2d 182, 186 (1997) (citation omitted). "The determining factor is the presence of evidence to support a conviction of the lesser included offense." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984) (citations omitted). An attempted first-degree rape instruction is "warranted when the evidence pertaining to the crucial element of penetration conflicts or when, from the evidence presented, the jury may draw conflicting inferences." *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986) (citations omitted), *superseded by statute on other grounds by* N.C. Gen. Stat. § 8C-1, Rule 404(b), *as recognized in State v. Moore*, 335 N.C. 567, 440 S.E.2d 797 (1994).

Regarding plain error, our Courts have stated the following:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after

> reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and quotation marks omitted) (emphasis and alteration in original). Defendant bears the burden of showing that an error arose to the level of plain error. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

Second-degree rape is defined by N.C. Gen. Stat. § 14-27.3 (2011), which states, in pertinent part, that "[a] person is guilty of rape in the second-degree if the person engages in vaginal intercourse with another person[.]" *Id.* Likewise, incest is defined by N.C. Gen. Stat. § 14-178 (2011), which states, in pertinent part, that "[a] person commits the offense of incest if the person engages in carnal intercourse[.] . . ." *Id.* In the context of rape and incest, our Courts have stated, "[t]he slightest penetration of the sexual organ of the female by the sexual organ of the male amounts to carnal knowledge in a legal sense." *State v. Bruce*, 315 N.C. 273, 281-82, 337 S.E.2d 510, 516 (1985).

In this case, witnesses gave the following testimony regarding penetration: The victim said Defendant "tr[ied] to get his penis to go inside my vagina." When asked how far Defendant was able to get his penis inside her vagina, the victim replied, "Not very far. If he could even get it in at all." According to the victim, this was because Defendant could not maintain an erection. When asked more specifically, in a police interview, about the degree of penetration, the victim affirmed that Defendant's penis went "past the lips." Defendant denies that he penetrated her, explaining that he could not maintain an erection.

Defendant cites three cases to support his argument that the evidence in this case was such that the trial court committed plain error

by failing to charge the jury on attempted second-degree rape and attempted incest: *Johnson*, 317 N.C. 417, 347 S.E.2d 7, *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004), and *State v. Carter*, ___ N.C. App. ___, 718 S.E.2d 687 (2011), *disc. review allowed*, ___ N.C. ___, 731 S.E.2d 140 (2012).

In *Johnson*, 317 N.C. 417, 347 S.E.2d 7, the trial court held:

> [T]he court . . . err[ed] in failing to instruct the jury on attempted first degree rape[4] with respect to [the victim] because there was conflicting evidence of penetration in her case. A trial court must submit a lesser included offense instruction if the evidence would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater. Instructions pertaining to attempted first degree rape as a lesser included offense of first degree rape are warranted when the evidence pertaining to the crucial element of penetration conflicts or when, from the evidence presented, the jury may draw conflicting inferences.

*Id*. at 435-36, 347 S.E.2d at 18. *Johnson* provides authority for the conclusion that the trial court committed *error* by failing to instruct on attempted second-degree rape and attempted incest in this case; however, *Johnson* did not review the question for *plain error*, and is therefore not instructive regarding our analysis on that point.

In *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004), the defendant was convicted of attempted second-degree rape, and this Court upheld his conviction, stating the trial court properly gave the jury an instruction on attempted second-degree rape, as the evidence supported it:

> "It is error for the trial court to submit as an alternative verdict a lesser included offense which is not actually supported by any evidence in the case." *State v. Ray*, 299 N.C. 151, 163, 261 S.E.2d 789, 797 (1980). "Instructions on the lesser included offenses of first degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration." *State v. Wright*, 304 N.C. 349, 353, 283 S.E.2d 502, 505 (1981).

---

4. We note that both the statute defining first degree rape, N.C. Gen. Stat. § 14-27.2 (2011), and the statute defining second-degree rape, N.C. Gen. Stat. § 14-27.3, require "vaginal intercourse[,]" which is defined in either case as "[t]he slightest penetration of the sexual organ[.]" *Bruce*, 315 N.C. at 281-82, 337 S.E.2d at 516.

In this case, although the majority of the victim's testi-
mony was that defendant did in fact penetrate her
vagina, there is other evidence in the case that puts the
fact of penetration in doubt or conflicts with the vic-
tim's testimony. The victim testified in one instance that
she was not sure the defendant penetrated her vagina
and in reporting the rape to others stated defendant had
attempted to rape her. The medical evidence consisted
of testimony that the only abnormalities observed were
the abrasions to the introitus, located at the opening
of the vagina, which were not specific to, nor diagnostic
of, sexual abuse. Further, defendant presented evidence
that the rape suspect kit revealed that none of defen-
dant's hairs were found on the victim, none of the vic-
tim's hairs were found on him, and further no semen
was found inside the victim or on her clothes. This is all
evidence supporting an attempted rape conviction and
the trial court did not err in submitting this charge to
the jury and therefore, defendant is not entitled to rever-
sal of his attempted rape conviction.

*Id.* at 733-74, 594 S.E.2d at 425. *Couser* stands for the proposition that
a jury instruction on attempted rape is proper if evidence concerning
penetration is conflicting. However, *Couser* also did not address the
specific question posed by Defendant on appeal in this case, which is
whether the trial court committed plain error by failing to instruct the
jury on attempted second-degree rape and attempted incest upon
the evidence presented here.

The third case cited by Defendant, *State v. Carter*, ___ N.C. App.
___, 718 S.E.2d 687 (2011), *disc. review allowed*, ___ N.C. ___, 731
S.E.2d 140 (2012),[5] specifically addresses the question presented in
this appeal. In *Carter*, the Court held that "the trial court's failure to
instruct the jury on attempted first-degree sexual offense constituted
plain error" when the evidence presented regarding anal penetration

5. Our Supreme Court has granted discretionary review, and briefs have been
submitted by the parties, on the question of whether this Court erred in concluding
that the trial court in *Carter* committed plain error by failing to instruct the jury on
attempted first degree sexual offense. Ultimately, our Supreme Court's decision
in *Carter* will be controlling on this issue. However, presently, this Court is bound by
*Carter. State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 133 (2004) (stating that
"[w]here a panel of the Court of Appeals has decided the same issue, albeit in a dif-
ferent case, a subsequent panel of the same court is bound by that precedent, unless
it has been overturned by a higher court").

was conflicting. *Id.* at ___, 718 S.E.2d at 698. The following evidence was presented regarding penetration in *Carter*:

> Even a cursory examination of the record reveals that the evidence concerning the issue of penetration was in conflict. Although Vanessa answered in the affirmative when asked if Defendant "stuck . . . his penis . . . in . . . her bottom," she also testified that Defendant placed his penis "on [her] butthole" and that Defendant's penis "would be between my butt cheeks . . . over my butthole or hole in my anus." When asked to clarify her testimony, Vanessa stated that "he would put his doodle between my butt cheeks and it will be sort of pressing on my butthole." Finally, Ms. Carroll testified that a "penis . . . inside a butt crack" or "on a butthole or on butt cheeks" could cause an anal fissure if "enough vigor [is] pressed against the anus" and that other types of trauma, such as "[c]onstipation, a large amount of diarrhea, . . . irritable bowel syndrome . . . [or] any type of other trauma" could have caused Vanessa's anal fissure as well.

*Id.* at ___, 718 S.E.2d at 697.

The State, however, cites *State v. Williams*, 314 N.C. 337, 333 S.E.2d 708 (1985), to support its argument that the trial court did not commit plain error by failing to instruct on attempted second-degree rape and attempted incest in this case. In *Williams*, the jury was instructed to find defendant guilty of first-degree rape or not guilty. The defendant contended that the evidence regarding penetration was equivocal and that an instruction on attempted first-degree rape was required. The defendant in *Williams* relied on his statement as evidence requiring an instruction on attempted first-degree rape, which contained the following:

> I embarrassingly removed my pants to my knees, and without touching her elsewhere, *struggled to penetrate without an erection.* At this the girl began a muffled laugh, so I got up and dressed as Shannone was going through her purse.

*Id.* at 351, 333 S.E.2d at 718 (emphasis in original). The North Carolina Supreme Court addressed the defendant's argument that the foregoing statement was evidence that he did not penetrate the victim's vagina by stating the following:

The simple fact that a person struggles to accomplish some feat, taken by itself, implies neither success nor failure. The fact that defendant "struggled to penetrate" is far from equivocal and in no way negates a completed act. A careful reading of defendant's statement as a whole fails to alter this observation. While penetration is best achieved when there is an erection, by no means can penetration to the degree necessary to satisfy the penetration element of rape be excluded because there is no erection. *See State v. Brown*, 312 N.C. 237, 321 S.E.2d 856 (1984). Luanne Odom testified unequivocally that defendant inserted "his penis . . . into my vagina." . . . [W]e hold that Luanne Odom's testimony and defendant's failure to deny penetration compelled the instruction given by the trial court.

*Id.* at 352, 333 S.E.2d at 718. The Court held that the trial court's failure to instruct on attempted first-degree rape was not plain error.

We believe the evidence in this case aligns more with *Carter* than with *Williams*. Here, the Defendant denies penetration. Also, the victim testified that Defendant "tr[ied] to get his penis to go inside my vagina." When asked whether Defendant was able to insert his penis, the victim said, "Not very far. If he could even get it in at all." According to the victim, this was because Defendant could not maintain an erection. In a police interview, when asked about the degree of penetration, the victim affirmed that Defendant's penis went "past the lips." At trial, the victim gave the following testimony:

A: He would lay on top of me and actually try and get it to go in, or he'd have me laying in a diagonal direction against the bed.

Q: And when you say he would try to get it in, what do you mean by that?

A: He would try and get his penis to go inside my vagina.

Q: Okay. Was he able to ever?

A: (Shakes head negatively.)

Q: How far was he able to get his penis inside?

A: Not very far. If he could even get it in at all.

STATE v. BOYETT

[224 N.C. App. 101 (2012)]

Q: So I guess I'm a little bit confused about what you mean by "he tried." Is that he just asked you, or did he physically touch his penis with – in your vagina?

A: Physically touched.

This case is distinguishable from *Williams*: In *Williams*, the victim testified unequivocally that the defendant inserted "his penis . . . into my vagina." *Id.* at 352, 333 S.E.2d at 718. The victim's assertion in *Williams* was only contradicted by the defendant's statement that he "struggled to penetrate[.]" *Id.* at 351, 333 S.E.2d at 718 (emphasis omitted). Here, however, the victim's own statements support the proposition that Defendant did, in fact, penetrate her vagina, but the victim's statements also put the fact of penetration in doubt. Defendant denies penetration, explaining that he could not maintain an erection.

The evidence on penetration in *Carter*, however, is remarkably similar to the evidence presented in this case, and, resultantly, we believe *Carter* is indistinguishable. In *Carter*, even though the victim replied affirmatively when asked whether the defendant penetrated her, other statements by the victim tend to show that no penetration occurred. Like this case, the victim's testimony in *Carter* could support both the proposition that the defendant penetrated her and that he did not.[6]

Based on the Court's holding in *State v. Carter*, ___ N.C. App. ___, 718 S.E.2d 687, and our review of the evidence in the present case, we conclude the trial court committed plain error by failing to instruct the jury on attempted second-degree rape and attempted incest. As such, Defendant must receive a new trial on his six second-degree rape convictions and his six incest convictions. This holding, however, has no bearing on Defendant's ten second-degree sexual offense convictions, as the statute defining the second-degree sexual offense for which Defendant was convicted, N.C. Gen. Stat. § 14-27.5(a) (2011), provides that "[a] person is guilty of a sexual offense in the second-degree if the person engages in a sexual act with another per-

6. We note, lest confusion arise, that this Court does not give greater weight to the testimony of a victim in cases involving sexual offenses than to any other witness. This Court does not weigh evidence at all. *State v. Moore*, ___ N.C. ___, ___, 726 S.E.2d 168, 174 (2012) ("The jury's role is to weigh evidence, assess witness credibility, assign probative value to the evidence and testimony, and determine what the evidence proves or fails to prove.") In the cases above, however, the victims' testimony is essential to our analysis.

son: (1) By force and against the will of the other person; or (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally disabled, mentally incapacitated, or physically helpless." *Id.* The term "sexual act" encompasses "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse[.]"[7] N.C. Gen. Stat. § 14-27.1(4) (2011). Therefore, a Defendant may be guilty of a second-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.5(a) without "intercourse" or "penetration."

## II. Jury Instructions and the Term, "victim"

[2] In Defendant's second argument, he contends the trial court erred by denying his motion to refrain from referring to J.B. as the "victim" in its instructions to the jury, because this reference was a prohibited expression of the trial court's opinion. We find this argument without merit.

N.C. Gen. Stat. § 15A-1232 (2011) provides that "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved[.]" *Id.* Likewise, N.C. Gen. Stat. § 15A-1222 (2011) provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." *Id.*

"In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995). "Unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *Id.*

In this case, during the charge conference, Defendant objected to the use of the word "victim" in reference to J.B. The court responded to Defendant's objection by deciding to use J.B.'s name when referring to the elements of the crime but to use the term, "victim," as found in the pattern jury instructions when describing the generic definition of the crime. The following, for example, is a portion of the trial court's jury instructions:

---

7. In this case, there was some evidence of fellatio, vaginal intercourse, and digital penetration.

If you do not find the defendant guilty of second-degree rape on the basis of engaging in vaginal intercourse with a mentally disabled victim and if you do not find him guilty of second-degree rape on the basis of engaging in vaginal intercourse with a victim by the use or threatened use of force, it would be your duty to return a verdict of not guilty. Regarding case number 10-CRS-7654, Count 1, if you find from the evidence beyond a reasonable doubt that between July 18, 2006, and July 18, 2008, and on a completely separate occasion than alleged in Counts 1 through 5 of 11-CRS-2155, the defendant engaged in vaginal intercourse with [J.B.], and at that time she suffered from mental retardation and as a result was permanently rendered so substantially incapable of resisting an act of vaginal intercourse as to be mentally disabled, and that the defendant knew or should reasonably have known that the victim was mentally disabled, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt about one or more of these things, you would not return a verdict of guilty of second-degree rape on the basis of engaging in vaginal intercourse with a mentally disabled victim.

We find this Court's opinion in *State v. Henderson*, 155 N.C. App. 719, 574 S.E.2d 700, *disc. review denied*, 357 N.C. 64, 579 S.E.2d 569 (2003), instructive in this case. In *Henderson*, the defendant made a similar objection to the trial court's use of the word, "victim," in the jury instructions. This court concluded the defendant's trial was not prejudiced by the trial court's use of the word, "victim," and gave the following explanation:

We do not feel that defendant has shown undue prejudice arising from the use of the term "victim" so as to justify awarding a new trial. . . . [T]he trial court was not intimating that he had committed any crime. The word victim is included in the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges and is used regularly to instruct on the charges of first-degree rape and first-degree sexual offense. While defendant makes a valid point that the use of a more neutral term such as "alleged victim" or "complainant" would remove any possibility that the

jury would confuse the trial court's instruction for the comments on the evidence, defendant has failed to show prejudicial error for the trial court to follow the pattern jury instructions.

*Id.* at 723, 574 S.E.2d at 703-04.

We believe, in this case, it is clear that the trial court was not intimating any opinion upon whether Defendant had committed the crimes charged by using the word, "victim," in its charge to the jury. The trial court simply gave the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges. We conclude the trial court's use of the word, "victim," in its charge to the jury did not reasonably have a prejudicial effect on the result of the trial, and therefore, any error was harmless.

III: Sex Offender Registration and Satellite-Based Monitoring

[3] In Defendant's third argument, he contends the trial court erred in ordering Defendant to register as a sex offender for the duration of his life and to enroll in lifetime satellite-based monitoring, because the Judicial Findings and Order for Sex Offenders was based on file number 10 CRS 7654—the second-degree sexual offense convictions. Defendant contends a second-degree sexual offense cannot constitute an "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a) (2011). This argument has merit.

"[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). Defendant alleges a violation of a statutory mandate, and "[a]lleged statutory errors are questions of law." *State v. Mackey*, ___ N.C. App. ___, ___, 708 S.E.2d 719, 721 (2011), *disc. review denied*, 365 N.C. 193, 707 S.E.2d 246 (2011). A question of law is reviewed *de novo. Id.* Under the *de novo* standard, the Court "considers the matter anew and freely substitutes its own judgment for that of the lower" court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

We first address Defendant's argument pertaining to the alleged error in the order requiring his enrollment in satellite-based monitoring for life, after which we proceed to the lifetime sex offender registration portion of the order. Although both Defendant and the State combine their arguments pertaining to lifetime sex offender registra-

tion and lifetime satellite-based monitoring, the law relating to registration and monitoring in the general statutes mandates that the effect of any error in the trial court's aggravated offense determination would necessarily lead to a different result on the registration issue from the monitoring issue.

## A. Satellite-Based Monitoring

**[4]** N.C. Gen. Stat. § 14-208.40A (2011) provides that, in the sentencing phase of trial, a court determining whether to require a convicted criminal defendant to enroll in satellite-based monitoring must first ascertain whether the defendant had been convicted of a reportable offense as defined by N.C. Gen. Stat. § 14-208.6(4) (2011). If Defendant has been convicted of a reportable offense, the court must then determine, upon evidence submitted by the district attorney,[8] whether the defendant falls into one of the following five categories:

(i)  the offender has been classified as a sexually violent predator pursuant to [N.C. Gen. Stat. §] 14-208.20,

(ii)  the offender is a recidivist,

(iii)  the conviction offense was an aggravated offense,

(iv)  the conviction offense was a violation of [N.C. Gen. Stat. §§] 14-27.2A or 14-27.4A, or

(v)  the offense involved the physical, mental, or sexual abuse of a minor.

N.C. Gen. Stat. § 14-208.40A(b) (2011). If the court finds that the defendant falls into one of the first four categories, it "shall order the offender to enroll in a satellite-based monitoring program for life." N.C. Gen. Stat. § 14-208.40A(c) (2011); *see also* N.C. Gen. Stat. § 14–208.40B(c). Another procedure, involving a risk assessment of the defendant by the Department of Correction, is implemented if the defendant falls into the fifth category. *See* N.C. Gen. Stat. § 14-208.40A(d) and (e) (2011).

In this case, the trial court correctly found that second-degree sexual offense is a reportable offense as defined by N.C. Gen. Stat. § 14-208.6(4).[9] However, the trial court then determined, in the sec-

---

8. Also, "[t]he offender shall be allowed to present to the court any evidence that the district attorney's evidence is not correct." N.C. Gen. Stat. § 14-208.40A(a) (2011).

9. Second-degree sexual offense, defined by N.C. Gen. Stat. § 14-27.5, is a "sexually violent offense" according to N.C. Gen. Stat. § 14-208.6(5) (2011).

ond stage of the required analysis, that Defendant's second-degree sexual offense was an "aggravated offense." The trial court committed error by doing so.

A close reading of the applicable statutes and relevant decisions shows that a second-degree sexual offense conviction cannot be an "aggravated offense." *See State v. Parker,* 721 S.E.2d 762 (2012)[10] ; *see also State v. Brooks,* 204 N.C. App. 193, 693 S.E.2d 204 (2010) (holding, in the context of sexual battery, that "because sexual battery does not involve 'vaginal, anal, or oral penetration[,]' sexual battery is not an 'aggravated offense' for the purposes of N.C.G.S. § 14–208.40B"). In determining whether a particular crime constitutes an aggravated offense, "the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction." *State v. Davison,* 201 N.C. App. 354, 364, 689 S.E.2d 510, 517 (2009), *disc. review denied,* 364 N.C. 599, 703 S.E.2d 738 (2010). In other words, the elements of the conviction offense must "fit within" the statutory definition of "aggravated offense." *State v. Singleton,* 201 N.C. App. 620, 630, 689 S.E.2d 562, 569, *disc. review improvidently allowed,* 364 N.C. 418, 700 S.E.2d 226 (2010).

N.C. Gen. Stat. § 14-208.6(1a) defines an "aggravated offense" as any criminal offense that includes either "(i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old." N.C. Gen. Stat. § 14-208.6(1a) (2011). Thus, under either prong of the statutory definition, a sexual act involving vaginal, anal, or oral penetration must be *in the elements* of the conviction offense in order for a crime to constitute an "aggravated offense." *See Parker,* 721 S.E.2d 762 (2012), *Davison,* 201 N.C. App. at 364, 689 S.E.2d at 517, *State v. Phillips,* 203 N.C. App. 326, 329, 691 S.E.2d 104, 106, *disc. review denied,* 364 N.C. 439, 702 S.E.2d 794 (2010).

Here, the trial court determined that Defendant's second-degree sexual offense convictions were "aggravated offenses." The statute defining second-degree sexual offense states that the following are

10. Although, *State v. Parker,* 721 S.E.2d 762 (2012), is an unpublished opinion, the Court in *Parker* squarely addressed the question here—whether a second-degree sexual offense conviction constitutes an aggravated offense. Even though *Parker* is not binding authority on this Court, the *Parker* Court's reading of the relevant statutes and law is accurate. We reiterate language from the *Parker* Court's explanation on this issue.

the elements constituting the crime: "the person engages in a sexual act with another person: (1) By force and against the will of the other person; or (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally disabled, mentally incapacitated, or physically helpless." N.C. Gen. Stat. § 14-27.5(a). The term "sexual act" in the context of second-degree sexual offense encompasses "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse[;] [s]exual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1(4).

On appeal, Defendant specifically argues that penetration must be an elemental part of the crime constituting an aggravated offense; but "penetration is not required to commit second-degree sex offense because there are several 'sexual acts' that do not require penetration[.]" On this basis, Defendant argues the trial court erred in its determination that his second-degree sexual offense convictions were aggravated offenses. We agree.

After considering only the elements of second-degree sexual offense, as required by *Davison*, 201 N.C. App. at 364, 689 S.E.2d at 517, to determine whether the elements "fit within" the statutory definition of "aggravated offense," *Singleton*, ___ N.C. App. at ___, 689 S.E.2d at 569, it is clear that a sexual act constituting a second-degree sexual offense does not require, but may involve, penetration. *See Parker*, 721 S.E.2d 762 (2012). Other sexual acts, not involving penetration, *see* N.C. Gen. Stat. § 14-27.1(4), may also constitute a second-degree sexual offense. Thus, a conviction of second-degree sexual offense may or may not be based on a sexual act involving penetration in the underlying facts. A review of the underlying facts by the trial court in its determination as to whether a conviction constitutes an aggravated offense is prohibited. *Davison*, 201 N.C. App. at 364, 689 S.E.2d at 517. Without a review of the underlying factual scenario giving rise to the second-degree sexual offense conviction in this case, the trial court could not have determined whether Defendant's second-degree sexual offense conviction involved—as required to constitute an aggravated offense—penetration. Therefore, in light of our review of the plain language of the statutes at issue, and the decisions construing those statutes, we must conclude that the trial court erred when it determined that Defendant's conviction of second-degree sexual offense by the commission of a sexual act under N.C. Gen. Stat. § 14-27.5(a) was an "aggravated offense" as defined under

N.C. Gen. Stat. § 14-208.6(1a). Upon consideration of the elements of the offense only, and not the underlying factual scenario giving rise to the convictions, the elements of second-degree sexual offense do not "fit within" the statutory definition of "aggravated offense." *See, e.g., Phillips*, 203 N.C. App. at 329, 691 S.E.2d at 107 (holding that a defendant's conviction of felonious child abuse under N.C. Gen. Stat. § 14-318.4(a2) (2011) may or may not have been a conviction based on proof of the commission of "a sexual act involving penetration," which is required for an offense to be considered an "aggravated offense" under N.C. Gen. Stat. § 14-208.6(1a), and concluding, in light of the rule in *Davison* prohibiting consideration of the underlying factual scenario giving rise to the conviction, that the defendant's felonious child abuse conviction was not an "aggravated offense"). As the basis of the trial court's order requiring that Defendant enroll in lifetime satellite-based monitoring was that Defendant's offense of conviction, second-degree sexual offense, was an aggravated offense, this portion of the order must be reversed. We hold the trial court erred in this case by entering an order for sex offenders requiring that Defendant enroll in satellite-based monitoring on the basis that the second-degree sexual offense conviction constituted an aggravated offense.

### B. Lifetime Registration Requirement

**[5]** Defendant also contends the error discussed above invalidates a different portion of the same order, which requires him to "register as a sex offender . . . for his/her natural life." Defendant presents the same argument for both lifetime sex offender registration and lifetime satellite-based monitoring – specifically, that "[b]ecause proof of second-degree sex offense does not require penetration, it is not an aggravated offense requiring lifetime registration." We agree.

N.C. Gen. Stat. § 14-208.23·(2011) mandates lifetime registration for an offender who is a recidivist, has been convicted of committing an aggravated offense, or is a sexually violent predator. N.C. Gen. Stat. § 14-208.7 (2011) mandates registration for thirty years for an offender who has committed a reportable conviction.[11]

In this case, the trial court found that Defendant was neither a recidivist nor a sexually violent predator, but found that the second-degree sexual offense was an aggravated offense, and, on this basis, ordered that Defendant register as a sex offender for life. *See* N.C.

---

11. There is no similar statutory mandate requiring enrollment in satellite-based monitoring for offenders who have committed reportable convictions.

Gen. Stat. § 14-208.23 (2011). In the previous section, we explained that the trial court's determination that Defendant had been convicted of an aggravated offense was in error, which invalidated the satellite-based monitoring portion of the order. Because the portion of the trial court's order requiring Defendant's lifetime sex offender registration was based on the same erroneous determination by the trial court in the previous subsection that Defendant's second-degree sexual offense conviction was an aggravated offense, it follows that the lifetime registration requirement was erroneously entered. However, on remand, the trial court may enter an order, based on Defendant's second-degree sexual offense conviction, requiring Defendant to register as a sex offender for a period of 30 years, given that Defendant's second-degree sexual offense conviction constitutes a reportable offense, even though it does not constitute an aggravated one. *See* N.C. Gen. Stat. § 14-208.7.

We advise the trial court to consider that, on remand, and after Defendant's new trial, there may be additional convictions serving to elevate Defendant's classification with regard to lifetime satellite-based monitoring enrollment and lifetime sex offender registration. However, even if Defendant is acquitted of the second-degree rape and incest charges in his new trial, Defendant's second-degree sexual offense convictions from the trial on appeal in the present case remain intact, and, resultantly, N.C. Gen. Stat. § 14-208.7 requires that Defendant register as a sex offender for thirty years based on those convictions.

We acknowledge the State's argument in its brief, citing *State v. Jarman*, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000), and contending that the reference in the order to second-degree sexual offense, 10 CRS 7654, was a clerical error. The State proposes the proper remedy is to remand the case for reentry of the order based on Defendant's convictions of second-degree rape and incest. However, because Defendant is entitled to a new trial on his second-degree rape and incest convictions, this remedy is not available.

For the foregoing reasons, we reverse the trial court's order requiring Defendant's lifetime registration as a sex offender and lifetime enrollment in satellite-based monitoring, and remand this case to the New Hanover County Superior Court for a new trial on Defendant's second-degree rape and incest convictions. If, at the conclusion of the new trial, the jury finds Defendant guilty of second-degree rape or incest, the trial court shall determine, in accordance with N.C. Gen. Stat. § 14-208.40A and N.C. Gen. Stat. § 14-208.23, whether Defendant's lifetime registration as a sex offender and life-

time enrollment in satellite-based monitoring is proper based on Defendant's convictions and classifications, and enter an order consistent therewith.

In summary, Defendant shall receive a new trial on his second-degree rape and incest convictions. There was no error at trial with regard to Defendant's second-degree sexual offense convictions. However, the trial court's order requiring Defendant's lifetime registration as a sex offender and lifetime enrollment in satellite-based monitoring based on second-degree sexual offense, which is not an aggravated offense, is reversed and remanded.

NO ERROR, in part; NEW TRIAL, in part; REVERSED and REMANDED, in part.

Judges McGEE and BEASLEY concur.